NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PAUL H.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civil Action No. 24-05970 (RK)

**MEMORANDUM OPINION**

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court on Paul H.'s[1] ("Paul" or "Plaintiff") appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which denied Paul's request for disability insurance benefits and supplemental security income. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

**I.    BACKGROUND**

    In this appeal, the Court must answer the following question: Does substantial evidence support Administrative Law Judge Leonard Costa's ("Judge Costa") determination of Paul's residual functional capacity?

    **A.    PROCEDURAL POSTURE**

    In 2022, Paul filed applications for a period of disability, disability insurance benefits, and supplemental security income, alleging an onset date of January 1, 2019. (Administrative Record

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

("AR") at 173–186.)[2] Paul, at the time of the subject application, was 48 years old. (*Id.*) The Social Security Administration (the "Administration") denied these requests both initially (*id.* at 91–100) and on reconsideration, (*id.* at 105–111). Thereafter, Paul requested a hearing before an Administrative Law Judge ("ALJ"). (*See id.* at 118.) On June 26, 2023, Judge Costa held a hearing at which he received testimony from both Paul, represented by counsel,[3] and Rocco Meola, a vocational expert ("VE"). (*Id.* at 34–54.) On August 21, 2023, Judge Costa issued a written decision, finding that Paul was not disabled. (*Id.* at 19–29.) The Administration's Appeals Council denied Paul's request to review Judge Costa's decision. (*Id.* at 1–6.) This appeal followed. (ECF No. 1.) The Record was filed on the docket on October 21, 2024. (ECF No. 7.) Paul then filed his moving brief ("Pl. Br.," ECF No. 10), the Commissioner filed an opposition ("Opp. Br.," ECF No. 12), and Paul filed a reply ("Reply Br.," ECF No. 13).

### B. JUDGE COSTA'S DECISION

In his August 21, 2023 decision, Judge Costa held that Paul was not disabled under the prevailing Administration regulations. (*See generally* AR at 19–29.) To reach this decision, Judge Costa analyzed Paul's application under the five-step process for determining whether an individual is disabled, as set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a). At Step One, Judge Costa found that Paul had not engaged in substantial gainful activity from his alleged onset date of January 1, 2019 through the date of decision. (*Id.* at 21 (citing 20 C.F.R. §§ 404.1571 *et seq.* and 20 C.F.R. §§ 416.971 *et seq.*).) At Step Two, Judge Costa found Paul suffered from two severe

---

[2] The Administrative Record ("Record" or "AR") is available at ECF Nos. 7-1 through 7-7. This Opinion will reference only page numbers in the Record without the corresponding ECF numbers.

[3] Judge Costa's decision indicates Paul was represented by "Ricky Gar Stern, a non-attorney representative," (AR at 19), but the transcript from the hearing states Paul "was represented by his attorney, Ed Rao" who was "of counsel to the GAR Disability Firm." (*Id.* at 36.)

2

impairments: bipolar disorder and a panic disorder. (*Id.* (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).) At Step Three, Judge Costa determined that Paul did not have an "impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 21–23 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).) He observed that the record showed Paul "was able to attend doctor's appointments and perform some simple daily living activities." (*Id.* at 22.) Judge Costa determined that Paul had moderate limitations in (i) understanding, remembering or applying information; (ii) interacting with others; (iii) concentrating, persisting or maintaining pace; and (iv) adapting or managing oneself. (*Id.*)

As a precursor to Step Four, Judge Costa concluded that Paul had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, *see* 20 C.F.R. §§ 404.1567(b), 416.967, but that any job he performed must be limited in specified ways:

> [T]he claimant can have occasional interaction with co-workers and supervisors; no direct contact with the general public and cannot work in tandem with co-workers; able to understand, remember and carry out simple instructions with only occasional changes to essential job functions and is able to make simple work-related decisions[;] the individual would be off-task approximately 10% of the workday.

(AR at 23.) At Step Four, Judge Costa concluded that Paul was not capable of performing his past relevant work as a mortuary specialist. (*Id.* at 27 (citing 20 C.F.R. §§ 404.1565, 416.965).)

Finally, at Step Five, Judge Costa heard testimony from the VE and concluded that "there [were] jobs that exist[ed] in significant numbers in the national economy" that Paul could perform. (*Id.* (citing 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a).) The impartial VE testified that the representative jobs Paul could perform, consistent with Judge Costa's RFC, included mail sorter, sealing machine operator, and small parts assembler. (*Id.* at 28.) Judge Costa ultimately concluded that "considering [Paul's] age, education, work experience and residual functional capacity, [Paul] [was] capable of making a successful adjustment to other work that exist[ed] in

significant numbers in the national economy." (*Id.*) Thus, Judge Costa concluded that Paul was not under a disability from January 1, 2019 through the date of decision. (*Id.* (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).)

This appeal concerns Judge Costa's determination as a precursor to Step Four that Paul had a nonexertional limitation of being off-task approximately 10% of the workday.[4] (*See* Pl. Br. at 8.) In determining Paul's RFC, Judge Costa carefully considered "the entire record." (AR at 23.) He began his analysis by reviewing Paul's own testimony. (*See id.* at 23–24.) Judge Costa observed that Paul, who was unmarried and lived with his father, testified to being very depressed. (*Id.*; *see* AR at 40, 45.) A former drug user, Paul testified that he had also recently lost his sister to an overdose. (*Id.* at 24; *see* AR at 44, 48.) He also testified to experiencing sexual abuse as a child. (*Id.* at 23; *see* AR at 44.) While he testified to being able to microwave his own meals, Paul also testified to sleeping most of the day and showering only once a week. (*Id.* at 24; *see* AR at 45, 50.) Judge Costa noted that though he testified to having a driver's license, Paul testified that he had no friends and had problems being around others. (*Id.* at 23–24; *see* AR at 41, 47–48.) Judge Costa also noted that Paul testified that he loses his train of thought and can only follow a 30-minute television program "sometimes." (*Id.* at 24; *see* AR at 47.)

Judge Costa next turned to two function reports from Paul dated June 2022 and December 2022. (*Id.*; *see* AR at 225–232; 242–250.) These reports generally corroborated Paul's testimony. Judge Costa observed that in June 2022, Paul reported wearing the same clothes every day and that he only went outside once a week. (*Id.*; *see* AR at 226, 228.) He also reported that he had no

---

[4] Paul does not challenge Judge Costa's findings as to Steps One through Three and impliedly challenges Judge Costa's findings at Step Five only insofar as they were reliant on an improper RFC. (*See* Pl. Br. at 11.) As this Appeal primarily concerns Judge Costa's RFC determination, the Court summarizes in greater detail this aspect of Judge Costa's decision.

hobbies and that if he went outside to socialize, it was to his brother's barbecue, but this was not often. (*Id.*; *see* AR at 229.) He reported having difficulty concentrating, getting agitated easily, and having difficulty handling stress. (*Id.*; *see* AR at 230–231.) He could not follow spoken instructions well but could follow written instructions if he took his time. (*Id.*; *see* AR at 230.) Judge Costa noted that in December 2022, Paul also reported that he spoke to a son—details of whom are limited in the record—once a month[5] on the phone. (*Id.*; *see* AR at 246.) While Paul attempted to go to church at some point, he stopped; he reported getting anxious around people. (*Id.*; *see* AR at 245–246.)

Judge Costa next reviewed a June 2022 third-party function report from Paul's sister. (*Id.*; *see* AR at 217–224.) This report reiterated much of Paul's own reports, including his poor hygiene, that he rarely left bed, that he did not socialize, and that he had difficulty with memory, completing tasks, and with concentration. (*Id.*; *see* AR at 218, 221–222.) However, even though Paul had previously reported being able to follow written instructions, Paul's sister reported that Paul had "no interest" in following written instructions but was able to follow spoken instructions "on decent" days. (*Id.*; *see* AR at 222.) She explained that while he reportedly had no trouble getting along with authority figures, he did not handle stress well. (*Id.*; *see* AR at 223.)

Based on the above, Judge Costa determined Paul's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.*) He then turned to reviewing the medical evidence in the record from three medical sources: (1) AnnaMarie Resnikoff, Ph.D ("Dr. Resnikoff"); (2) Christopher Williamson, Psy.D ("Dr. Williamson"); and (3) CPC Behavioral Health Care.

In December 2020, Paul presented to Dr. Resnikoff, a consultative examiner, for a status

---

[5] The record suggests Paul actually reported speaking to a son twice a month. (AR at 246.)

5

examination. (*Id.* at 25; *see* AR at 361–363.) Dr. Resnikoff's report fleshed out some of Paul's own testimony. Judge Costa observed that Paul reported having been sexually abused for "years" as a child by a neighbor. (*Id.*; *see* AR at 362.) He also reported a history of cocaine and heroin abuse from the ages of 13 to 25 with his last reported use of drugs in July 2020. (*Id.*; *see* AR at 361.) Paul further reported to Dr. Resnikoff that he attended a rehabilitation facility off and on between 2009 and 2018 and that he was presently attending a methadone clinic. (*Id.*; *see* AR at 361–362.) He reported past suicidal thinking, along with a hospitalization, and current suicidal thinking, but without any intentions, plans, or attempts. (*Id.*; *see* AR at 362.) With respect to his daily living, Paul reported poor attention, concentration, and memory, and that he needed prompts and reminders from his father to wake up and take care of his daily needs. (*Id.*; *see* AR at 362.)

Judge Costa summarized that Dr. Resnikoff observed that Paul was "adequately groomed" and that he was "pleasant, cooperative and attempted to respond to all questions asked." (*Id.*; *see* AR at 362.) While Paul did not maintain eye contact, his speech was clear and easy to understand. (*Id.*; *see* AR at 362.) He was able to do simple mathematical calculations, solve word problems, and perform "serial sevens," as well as identify and then later recall the names of five common objects in the room. (*Id.*; *see* AR at 362.) Dr. Resnikoff found Paul's intellectual functioning, vocabulary skills and understanding of concepts, and general knowledge to be average. (*Id.*; *see* AR at 362.) Judge Costa summarized that when "presented with questions that were intended to assess his social planning ability and capacity to formulate a practical judgement[, Paul] responded on both a concrete and more abstract level." (*Id.*; *see* AR at 362.) Dr. Resnikoff diagnosed Paul with bipolar disorder and major depressive disorder, recurrent. (*Id.*; *see* AR at 363.)

Paul also attended a psychological evaluation with consultative examiner Dr. Williamson in August 2022. (*Id.* at 26; *see* AR at 412–414.) Judge Costa noted that Dr. Williamson observed

Paul appeared depressed—notably despondent—and anxious, nervous, and jittery. (*Id.*; *see* AR at 412.) He found Paul's general knowledge to be in the average range, but that his abstract reasoning appeared dull. (*Id.*; *see* AR at 413.) Paul could recall current events and could recall two out of three common objects at five and 10 minute intervals. (*Id.*; *see* AR at 413.) He was unable to complete "serial sevens," but Paul was able to repeat four digits forwards and three digits backwards. (*Id.*; *see* AR at 413.) Dr. Williamson diagnosed Paul with bipolar disorder, panic disorder, and polysubstance dependence that was in remission. (*Id.*; *see* AR at 413.)

Turning to a mental status examination with CPC Behavioral Health Care in January 2023, Judge Costa noted the examiner found Paul to be well-groomed. (*Id.*; *see* AR at 448.) While Paul reported to the medical examiner anxiety and mood swings, he was nonetheless cooperative with the examiner. (*Id.*; *see* AR at 448.) The medical examiner found Paul's substance abuse to be stable and in remission and diagnosed Paul with bipolar disorder. (*Id.*; *see* AR at 449–450.)

In February 2023, Paul reported to CPC Behavioral Health Care that he had side effects from medication he was on, leading to him discontinuing the medication. (*Id.*; *see* AR at 446.) In April 2023, Paul was reported as presenting for increasing anxiety and depression. (*Id.*; *see* AR at 419.) Paul reported symptoms such as suicidal ideation, loss of energy and motivation, loss of concentration, irritability, excessive worry, and avoidance of social settings. (*Id.*; *see* AR at 419.) This increase in symptoms was in part due to his sister's overdose. (*Id.*; *see* AR at 419.) Nonetheless, Paul's eye contact and speech were reported as normal, and he reported no impairment with memory. (*Id.*; *see* AR at 429.) By mid-April 2023, the only medication Paul was taking was methadone. (*Id.*; *see* AR at 464.)

Finally, Judge Costa reviewed the opinions of two state agency psychological consultants, Dr. David Clay, Ph.D. ("Dr. Clay") and Dr. Sally Morcos. ("Dr. Morcos"). (*Id.* at 27; *see* AR at

7

59–62; 68–71; 77–81, 86–89.) Judge Costa summarized the doctors' opinions as follows: "The DDS found the claimant could perform heavy/very heavy work with mild limitations regarding understanding, remembering or applying information and moderate limitations with interacting with others; concentration, persistence or pace and with adapting or managing oneself." (*Id.*) Judge Costa found these opinions "somewhat persuasive," but determined the record supported "greater limitations with regard to understanding, remembering or applying information based upon the claimant's consultative examinations which showed greater than mild limitations in this regard." (*Id.*) Judge Costa ultimately determined Paul's RFC was supported by his "limited daily living activities, inability to deal with others and limitations with concentration, attention and memory." (*Id.*)

## II.   LEGAL STANDARD

### A.   STANDARD OF REVIEW

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). In the event that the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin,* 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel,* 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford,* 399

F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak,* 777 F.3d at 610 (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris,* 642 F.2d 700, 706–07 (3d Cir. 1981) (citation omitted).

> **B.    ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS AND SUPPLEMENTAL SECURITY INCOME**

A claimant may establish disability under the Social Security Act by proving they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)).[6] The claimant bears the burden at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

## III.  DISCUSSION

Plaintiff's sole argument on appeal is that Judge Costa's imposition of a 10% off-task work limitation was not supported "by any medical evidence provided in Plaintiff's record." (Pl. Br. at 9.) According to Plaintiff, none of the medical reports in the record support that Plaintiff could stay on-task for 90% of the workday, and "[n]either of the psychological consultative examination opinions rendered results explaining *any limitations* regarding Plaintiff's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." (*Id.* (emphasis added) (noting "neither specified a minimum or maximum amount of off task behavior that could be expected of Plaintiff").) Plaintiff argues that "one could also argue that there is just as much evidence to support Plaintiff being off task 20% as there is 10%." (*Id.* at 11.) He posits this purported error by Judge Costa was harmful because the VE testified that if Paul's off-task limitation was increased to 15%, all work in the competitive labor market would be precluded. (*Id.*; *see* AR at 53 ("[In] [m]y experience 15% off task would preclude all work in the competitive labor market.").)

To start, a clarification is necessary. Insofar as Plaintiff argues that a specific medical finding was required for Paul's RFC, "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see Farina v. Comm'r of Soc. Sec.*, No. 14-2609,

---

[6] This five-step process applies to both applications for disability insurance benefits and supplemental security income. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 n.3 (3d Cir. 2004).

2021 WL 1904701, at *4 (D.N.J. May 12, 2021) ("An ALJ's RFC determination is an administrative finding, which is different from a pure medical opinion about a patient's mental health condition."). Nonetheless, it is true that the RFC needs to be supported by substantial evidence. *See* 42 U.S.C. § 405(g). Here, Judge Costa provided a thorough analysis of the available medical evidence in the record; indeed, almost half of his decision is dedicated to marshaling the medical evidence supporting Paul's RFC. (*See* AR at 23–27.) While there is no specific reference to Judge Costa's basis for imposing a 10% off-task limitation, Judge Costa repeatedly references where either Paul himself, Paul's sister, or medical examiners found Paul to have a lack of concentration. (*See generally id.*)

This case is very similar to a persuasive case out of the Eastern District of Pennsylvania, *Fayyadh v. O'Malley*, No. 23-4707, 2024 WL 3027471 (E.D. Pa. June 17, 2024). There, an ALJ imposed a 10% off-task limitation after finding the plaintiff suffered from mononeuropathy, residuals of left upper extremity fracture and retained hardware, obesity, post-traumatic stress disorder, and major depressive disorder. *Id.* at *2. The plaintiff challenged the 10% off-task limitation on the same basis as Plaintiff here—that the ALJ "lacked adequate support for the 10% figure, failing to build a logical bridge between her conclusion and the evidence of record." *Id.* at *3; (*see* Pl. Br. at 11 (arguing "the absence of a logical bridge and/or explanation" from Judge Costa regarding how he arrived at the off-task limitation).) The Eastern District of Pennsylvania acknowledged that the ALJ did not explicitly tie the 10% off-task limitation to evidence. *Id.* However, the court found that it was "inaccurate . . . to say there was no narrative explanation for the finding" because the ALJ included "a multi-page review of the medical and opinion evidence" to support the overall RFC determination. *Id.* The court found that the ALJ noted "considerable medical evidence" to support that the plaintiff retained sufficient concentration to

11

work. *Id.*

The Court is mindful that Paul's history bespeaks indisputable evidence of significant mental health struggles exacerbated by sexual abuse and drug addiction. However, in undertaking the limited review required by district courts, the Court is confident that Judge Costa's RFC determination—which relied on a review of the entire record—was clearly supported by substantial evidence. Judge Costa's RFC determination was based on a thorough and comprehensive five-paged analysis of the available testimony, medical records, and opinions. (*See* AR at 23–27.) He credited Paul's own testimony that he had difficulty paying attention (AR at 24), his sister's testimony that he had difficulty with completing tasks and concentration (*id.*), and reports within the medical evidence that he had difficulty with attention and concentration (*id.* at 25–27). Judge Costa acknowledged that medical examiners opined that Paul had a "moderate limitation" with respect to "concentration, persistence or pace" and adopted the same (*see* AR at 22, 27), ultimately finding that the RFC was supported in part by Paul's "limitations with concentration, attention and memory." (*Id.* at 27.) Indeed, Judge Costa went so far as to find the record supported *greater limitations* than those opined by the two state agency psychological consultants with respect to understanding, remembering or applying information "based upon [Paul's] consultative examinations which showed greater than mild limitations in this regard." (AR at 27.) On this record, there is no basis to second-guess Judge Costa's 10% off-task limitation.

Nonetheless, Judge Costa also noted in making his determination that the medical evidence revealed Paul was able to perform some tasks that required concentration, including serial sevens from 100 to 65, recalling common objects in a room, and recalling digits. (*Id.* at 25–26.) More broadly, Judge Costa observed that Paul was repeatedly referred to as being well-

12

groomed (*id.*), that he was viewed as being "pleasant" and "cooperative" (*id.* at 25), and that he was "well-oriented." (*Id.* at 26.) Judge Costa noted that Paul himself reported that he "would like to work," that he was able to socialize by texting, and that he was able to go outside, whether that be to go to his brother's barbecue or drive to pick up medication. (*Id.* at 24.) Judge Costa's RFC determination clearly accounted for both Paul's capabilities and limitations as revealed by the record evidence.

What's more, the plaintiff in *Fayyadh* had "not pointed to any evidence which specifically indicate[d] that he would be off task more than 10% of the workday. Instead, he simply argue[d] that the extent of his physical and mental impairments 'could result in an even greater off-task limitation.'" 2024 WL 3027471 at *4. The *Fayyadh* court contrasted the case to *Williams v. Kijakazi*, No. 21-4413, 2024 WL 101853 (E.D. Pa. Jan. 8, 2024). *Id.* In *Williams*, the Eastern District of Pennsylvania remanded a case where an ALJ did not provide reasoning for a 10% off-task limitation. *Williams*, 2024 WL 101853, at *6. However, in *Williams*, there was specific testimony from the plaintiff that he suffered from Crohn's Disease and that he would visit the bathroom "at least eight times a day" for a minimum of a half hour each time. *Fayyadh*, 2024 WL 3027471, at *4 (quoting *Williams*, 2024 WL 101853, at *6). In contrast, the *Fayyadh* court found there was no evidence of a quantifiable amount of time during which the plaintiff could not be working. *Id.*

The same is true here. Neither Plaintiff, nor the record itself, suggests that Judge Costa overlooked any evidence regarding the amount of time that Paul would be off-task.[7] *See*

---

[7] The closest Plaintiff comes to arguing that there is evidence to support an alternative off-task limitation is when citing to the psychiatric reviews undertaken by Dr. Clay and Dr. Morcos. (Pl. Br. at 5–6.) Plaintiff alleges that both doctors provided RFCs that indicated Paul was moderately limited in his ability to complete a normal workday and workweek without interruptions and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.*) Indeed, Dr. Clay found that Paul's capacity for concentration, persistence, and pace was moderately impaired, but more specifically found that he could "persist at tasks for 6–8 hours in an eight-hour period, at an appropriate pace, and sustain this level across days and weeks." (AR at 68, 70.) Dr. Morcos found the same. (*Id.* at

13

*Fayyadh*, 2024 WL 3027471, at *5 ("In the absence of evidence specifying that [plaintiff] would be off task more than 10% of the day, it is impossible to agree with him that the absence of a scientific, reproducible, method for arriving at that specific number is grounds for remand." (internal quotation marks omitted)). Indeed, Plaintiff admits that the record "is void of any medical evidence speaking to Plaintiff's functional capabilities with respect to the off task limitation." (Reply Br. at 2.) As the Eastern District of Pennsylvania summarized:

> [T]he important point is that the ALJ did not find evidence that [the plaintiff's] ability to stay on task was so limited that he could not work. Unlike the *Williams* claimant, [the plaintiff] has not pointed to medical opinion or objective data regarding his ability to stay on task. . . . [I]n the absence of such evidence the ALJ could have left this restriction out entirely. However, she obviously felt that [the plaintiff's] continuing pain required accommodation. . . . [T]he ALJ chose the most generous non-work-preclusive percentage possible.

*Fayyadh*, 2024 WL 3027471, at *5; *see Wennersten v. Colvin*, No. 12-783, 2013 WL 4821474, at *3 (W.D. Wis. Sept. 10, 2013) ("Although the [ALJ] did not explain why he chose five percent instead of two percent or six percent, that lack of precision is not a reason to reverse the decision. . . . The important point is that the [ALJ] did not find any evidence to show that plaintiff's ability to stay on task was impaired to the extent that it would keep him from working.").

As discussed hereinabove, Judge Costa appropriately analyzed the available record evidence in reaching his RFC determination, including the 10% off-task limitation. Plaintiff's arguments that Judge Costa did not provide specific support for the 10% off-task limitation (as opposed to a 0% or 20% off-task limitation) are of no matter here, particularly given that Plaintiff has failed to put forth any evidence to support a different result. *See J.D. on behalf of C.D. v. Comm'r of Soc. Sec.*, No. 20-1882, 2021 WL 4237242, at *2 (D.N.J. Sept. 17, 2021) ("[W]hen

---

77, 79.) Judge Costa explicitly noted that Paul was found to have a moderate limitation with respect to concentration, persistence or pace, and explained that the RFC determination was based in part on Paul's "limitations with concentration, attention and memory." (*Id.* at 27.) Plaintiff has not shown that any evidence was overlooked by Judge Costa in reaching his RFC determination.

appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in her favor, based on the existing record, she is quite unlikely to show that an error was harmful."). The Court finds that Judge Costa's RFC determination, including the off-task limitation, was supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**.

## CONCLUSION

Having reviewed the record as a whole, the Commissioner's decision is **AFFIRMED.** An appropriate Order follows.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: May 8, 2025